Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge
Dated: Friday, August 06, 2010 9:49:49 AM

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

| | |
|---|---|
| IN RE: | ) |
| | ) |
| TIGER AIRCRAFT, LLC | ) Case No. 3:07-bk-00047 |
| | ) |
| Debtor. | ) Chapter 7 |

### MEMORANDUM OPINION

Yao-Hwa Glass Co., Ltd., ("Yao-Hwa") filed an unsecured proof of claim for $2,353,804 in the Chapter 7 bankruptcy case of Tiger Aircraft, LLC ("Tiger"). The Debtor's Chapter 7 trustee objects to Yao-Hwa's classification of its proof of claim as unsecured on the grounds that Yao-Hwa's claim is on account of its equity interest in the Debtor, and, therefore, can only be paid if all unsecured claims receive full payment.

For the reasons stated herein, the court will sustain the Trustee's objection.[1]

### I. BACKGROUND

While in business, the Debtor designed and manufactured single-engine Tiger airplanes. On February 22, 2000, Yao-Hwa transferred $1.5 million to Tiger. In exchange, Yao-Hwa obtained a 30% economic interest in Tiger and became one of four voting Class A members with the right to receive profits and all other rights of a Class A member detailed in Tiger's Operating Agreement.

---

[1]The parties have requested that the court not hold a hearing on this matter. Therefore, the court will treat the parties' briefs as cross-motions for summary judgment. Summary judgment is appropriate when the matters presented to the court "show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56 ( c); Fed. R. Bankr. P. 7056; *Celotex v. Catrett*, 477 U.S. 317, 322 (1986). A fact is not "genuinely disputed unless factual conflict between the parties requires a trial of the case for resolution." *Finley v. Giacobbe*, 79 F.3d 1285, 1291 (2d Cir. 1996). Factual inferences are drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986) ("[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.").

1

On May 1, 2001, the Debtor sought additional funding by offering Class B membership interests. As stated in the Operating Agreement, Class B membership entitled the holder to a yearly, non-cumulative, preferred distribution. Class B members had no voting rights, and a Class B member was not permitted to dispose of the membership interest except in accordance with the terms of the Operating Agreement. Yao-Hwa purchased 75% of the Class B membership interests for $3 million. According to its proof of claim, Yao-Hwa is owed $739,674 in unpaid yearly distributions on account of its Class B membership interests.

In March of 2003, the Debtor created Class C membership interests. Like Class B, Class C membership interests are non-voting and the Operating Agreement restricts the right to transfer the membership interest. However, unlike Class B, Class C membership interests provide a cumulative, preferred distribution. Yao-Hwa purchased all the Class C membership interests for $5 million. According to its proof of claim, Yao-Hwa is owed $1,329,239 in unpaid yearly interest distributions on account of its Class C membership interests.

In November of 2004, the Debtor offered Class D membership interests. Like Class C, a Class D membership interest has no voting rights, but it entitles the holder to a mandatory, yearly cumulative preferred return of 8%. Yao-Hwa purchased $2.5 million in Class D membership interests. According to its proof of claim, Yao-Hwa is owed $284,891 in unpaid yearly distributions on its Class D membership interests.

## II. DISCUSSION

Yao-Hwa contends that the $2,353,804 in unpaid distributions owed to it on its Class B, C, and D memberships is properly classified as unsecured debt, rather than equity, on the basis that the obligation arises from amounts owed to it on its preferred returns.[2] Yao-Hwa argues that it has created dual equity-debt instruments in Tiger, the equity in the form of membership interests, the debt in the form of preferred returns. Yao-Hwa further contends that its proof of claim pertains only to the debt owed to it by Tiger's failure to pay the preferred returns.

The classification of Yao-Hwa's claim is important because, when a Chapter 7 Trustee distributes assets of a bankruptcy estate, unsecured creditors are paid in full, before any distribution

---

[2] Yao-Hwa is not seeking to classify amounts due to it on account of its Class A membership interest as unsecured debt.

2

is made to equity interests. *See* 11 U.S.C. 726; *Fairchild Dornier GMBH v. The Official Committee of Unsecured North Am., Inc.)*, 453 F.3d 225, 231 (4th Cir. 2006) ("[T]he priority scheme under § 726 provides, *inter alia*, that the claims of all unsecured creditors are satisfied before holders of equity interests."). Entities holding equity claims based on capital contributions receive a lower priority because "the essential nature of a capital interest is a fund contributed to meet the obligations of a business and which is to be repaid only after all other obligations have been satisfied." *Dornier*, 453 F.3d at 231. As such, "implementation of the Code's priority scheme requires a determination of whether a particular obligation is debt or equity." *Id.*

In making the determination of whether a claim is properly classified as debt or equity, the Court of Appeals for the Fourth Circuit directs a bankruptcy court to consider several different factors including, but not limited to:

> (1) the names given to the instruments, if any, evidencing the indebtedness; (2) the presence or absence of a fixed maturity date and schedule of payments; (3) the presence or absence of a fixed rate of interest and interest payments; (4) the source of repayments; (5) the adequacy or inadequacy of capitalization; (6) the identity of interest between the creditor and the stockholder; (7) the security, if any, for advances; (8) the corporation's ability to obtain financing from outside lending institutions; (9) the extent to which the advances were subordinated to the claims of outside creditors; (10) the extent to which the advances were used to acquire capital assets; and (11) the presence of a sinking fund to provide repayments.

*Dornier*, 453 F.3d at 233 (citations omitted). The above 11 factors "all speak to whether the transaction appears to reflect the characteristics . . . of an arm's length negotiation." *Id.* at 234 (quoting *In re Cold Harbor Assoc.*, 204 B.R. 904, 915 (Bankr. E.D. Va. 1997)). These factors are "not exclusive, and no one factor is predominant, nor are the factors to be given rigidly equal weight." *Cold Harbor*, 204 B.R. at 915. The test is a highly fact-dependent inquiry. *Dornier*, 453 F.3d at 234. "[T]he more likely [a transaction] appears to reflect the characteristics of . . . an arm's length negotiation, the more likely such a transaction is to be treated as debt." *Bayer Corp. V. Mascotech, Inc., (In re AutoStyle Plastics, Inc.)*, 269 F.3d 726, 750 (6th Cir. 2001).

**1.    The names given to the instruments evidencing the indebtedness**

The operating agreement defines Class B, C, and D as "membership interests." The Debtor

3

offered Class B, C, and D shares for the purpose of injecting capital in the business. The membership interests are not accompanied by notes or other instruments of indebtedness. "The absence of notes or other instruments of indebtedness is a strong indication that the advances were capital contributions and not loans." *Autostyle*, 269 F.3d at 750 (citing *Roth Steel Tube Co. v. Comm'r of Internal Revenue*, 800 F.2d 625, 631 (6th Cir. 1986)). Moreover, consonant with the West Virginia law of limited liability companies, equitable owners of a limited liability company are called "members," which is the same term used to describe Yao-Hwa's interest in the Debtor. *See* W.Va. Code §§ 31B-101, *et seq.* In fact, what Yao-Hwa dubs "investments" are actually called "capital contributions," in Tiger's Operating Agreement. *See* (Tiger Aircraft Operating Agreement, Document No. 269); *see also* (Claim No. 19-1). Thus, the names given to the instruments evidencing Yao-Hwa's right to payment indicate that Yao-Hwa has an equity interest in Tiger and not a debt. Likewise, Yao-Hwa's right to payment is called a "preferred return," which is payable on account of its "membership interest"; the instruments are not called debt payments on account of unsecured notes.

2.    **The presence or absence of a fixed maturity date and schedule of payments**

According to the Operating Agreement and its Amendments, the Class B, C and D membership interests do not provide a fixed maturity date or schedule of payments. Class B, C, and D do, however, provide annual preferred distributions so long as there is "cash available for distribution." Class C and D specifically provide for cumulative returns, meaning amounts not paid in one year are due in the following years.[3]

In *Autostyle*, the Sixth Circuit stated that "the absence of a fixed maturity date and a fixed obligation to repay is an indication that the advances were capital contributions and not loans." *Autostyle*, 269 F.3d at 750. Here, the Debtor had no obligation to repay the principal amount of Yao-Hwa's Class B, C, or D membership interests. The Debtor was only obligated to make a distribution on account of a Class B, C, or D membership interest if money was available. Because

---

[3] Yao-Hwa argues the Class B preferred return is mistakenly referred to in various parts of the First Amendment to Tiger's Operating Agreement as "non-cumulative." Furthermore, it argues that the intent of the parties, as described in Paragraph A of all the Amendments, was to afford the Members a mandatory, debt interest in the form of fixed per annum preferred payments. Resolution of this issue, however, is not material to the court's decision.

4

the preferred returns were dependent on the success of Tiger's business, this factor weighs in favor of finding that Yao-Hwa's interest in Tiger was equity, not debt.

**3.     The presence or absence of a fixed rate of interest and interest payments**

Both parties are in agreement that no interest accrues on the preferred returns once they are due and owing. "The absence of a fixed rate of interest and interest payments is a strong indication that the advances were capital contributions rather than loans." *Autostyle*, 269 F.3d at 750.

**4.     The source of repayments**

Under the Class B, C, and D membership provisions, repayment of the preferred distributions will only occur if the Debtor has sufficient "Cash Available for Distribution." The term "Cash Available for Distribution" is not defined in the Operating Agreement, nor in any of the Amendments. In the vernacular, this means that, if Tiger had cash available after paying or remaining current on its on-going obligations, Tiger would be obligated to make a preferred distribution. The fact that payment is tied to Tiger's success indicates Yao-Hwa's interest is equity, not debt.

**5.     The adequacy or inadequacy of capitalization**

Neither the Trustee nor Yao-Hwa have addressed this factor in their briefing to the Court.

**6.     The identity of interest between the creditor and the stockholder**

Yao-Hwa was a voting member of Tiger before purchasing the Class B, C, and D membership interests. "Where there is an exact correlation between the ownership interests of the equity holders and their proportionate share of the alleged loan . . . this evidence standing alone is almost . . . overwhelming" that the alleged loan is an equity contribution. *Id.* Yao-Hwa's membership interest in Classes B, C, and D directly correlates to the amount due Yao-Hwa in preferred returns. Thus, this factor weighs in favor of the position that Yao-Hwa had an equity interest in Tiger and is not an unsecured creditor.

**7.     The security, if any, for advances**

Yao-Hwa admits that no security was provided for the preferred returns. "Any absence of a security for an advance is a *strong indication* that the advances were capital contributions rather than loans." *AutoStyle*, 269 F.3d at 251 (emphasis added). Because Yao-Hwa did not take a security interest in the Debtor's assets to secure its promised interest returns, this factor weighs in favor of

5

treating the claim of Yao-Hwa as equity.

**8.   The corporation's ability to obtain financing from outside lending institutions**

Neither the Trustee nor Yao-Hwa addressed this factor in their briefing to the court.

**9.   The extent to which the advances were subordinated to the claims of outside creditors**

Yao-Hwa argues that heavy weight should be given to this factor as evidencing a loan on the basis that the preferred returns were not subordinated to the claims of other creditors. *See e.g., Drake v. Franklin Equip. Co. (In re Franklin Equip. Co.),* 416 B.R. 483, 518 (Bankr. E.D. Va. 2009) (holding that this factor is a strong indication evidencing debt). In *Autostyle*, however, the Court of Appeals for the Sixth Circuit found that any lack of subordination of advances to claims of outside creditors weighs only slightly in favor of characterizing the advances as loans. *Autostyle*, 269 F.3d at 752 ("We believe that this factor weighs slightly toward the advances being a loan."). Consistent with *Autostyle*, the court attributes little significance to the fact that Tiger's operating agreement is silent regarding whether preferred returns are subordinated to unsecured debts.

**10.   The extent to which the advances were used to acquire capital assets**

Yao-Hwa argues that the advances were used to meet the daily operating expenses of the Debtor. "Use of advances to meet the daily operating needs of the corporation, rather than to purchase capital assets, is indicative of a bonafide indebtedness." *Autostyle*, 269 F.3d at 752. The "advances" here, however, are Yao-Hwa's purchase of Class B, C, and D membership interests – no separate "advance" was made to secure the right to receive preferred returns. Yao-Hwa itself does not claim that its Class B, C, or D membership interests should be classified as unsecured debt. Thus, even if amounts "advanced" by Yao-Hwa to purchase Class B, C, or D shares were ultimately used to pay the operating expenses of Tiger, it does not follow that the preferred returns owed on account of these membership interests should be considered unsecured debt.

**11.   The presence of a sinking fund to provide repayments**

No evidence exists that there is a sinking fund to provide repayments. A sinking fund is a fund "consisting of regular deposits that are accumulated with interest to pay off a long-term corporate or public debt." *Black's Law Dictionary* 559 (8th ed. 2005). "The failure to establish a sinking fund for repayment is evidence that the advances were capital contributions rather than loans." *Autostyle*, 269 F.3d at 753. The absence of a sinking fund further promotes the Trustee's position that the advances were capital contributions rather than loans.

### III. CONCLUSION

In conclusion, after reviewing the *Dornier* factors, the court does not believe that a sufficient factual dispute exists for which the court needs a trial to hear testimony and to weigh the evidence. Yao-Hwa is an insider of Tiger. It made a "capital contribution" to be entitled to hold Class B, C, and D "membership interests." The amounts due on the preferred returns are a direct consequence of its rights as a member. No notes evidence any right to payment, Tiger's obligation to Yao-Hwa has no fixed maturity date, no interest is payable on unpaid preferred returns, and payment to Yao-Hwa is only made if Tiger's business is successful. No collateral was pledged as security to ensure payment to Yao-Hwa. Tiger established no sinking fund to provide payments to Yao-Hwa, and the common identity between Yao-Hwa – the member – and Yao-Hwa – the purported unsecured creditor – is simply too great to characterize its right to distributions on its preferred returns as anything other than an equity interest. The fact that Tiger's operating agreement is silent as to whether preferred returns should be subordinated to other unsecured debts is simply too tenuous to support its position that unpaid preferred returns should be characterized as unsecured debt.

The court will enter a separate order that grants the Trustee's objection to Yao-Hwa's proof of claim.